IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT WEST        )
    Plaintiff,   )
              )
   v.             )   Civil Action No. 03-1216
              )
NISOURCE LONG-TERM DISABILITY )
PLAN (f/k/a COLUMBIA ENERGY   )
GROUP LONG-TERM DISABILITY    )
PLAN), COLUMBIA ENERGY GROUP, )
NISOURCE, INC., and LIBERTY   )
MUTUAL INSURANCE COMPANY,     )
d/b/a LIBERTY LIFE ASSURANCE  )
COMPANY OF BOSTON,            )
    Defendants.  )

MEMORANDUM ORDER

Gary L. Lancaster,　　　　　　　　　　　December 8, 2006
District Judge.

     This is an action in ERISA. Plaintiff, Robert West, alleges that NiSource Long-Term Disability Plan, Columbia Energy Group, and NiSource, Inc. (collectively, "defendants"), improperly denied him long term disability ("LTD") benefits under the LTD plan in violation of ERISA, 29 U.S.C. § 1132 (a)(1)(B). Plaintiff seeks past, present, and future benefits under the LTD plan as well as attorney's fees and costs. Plaintiff and defendants have filed cross-motions for summary judgment. Defendants argue that the decision to deny LTD benefits was not arbitrary and capricious, therefore, they are entitled to summary judgment. Plaintiff argues that defendants applied the wrong definition of disability to his claim, and under the summary plan description's

definition of disability, he is entitled to long term disability benefits.

For the reasons set forth below, plaintiff's motion for summary judgment will be granted.

I.   BACKGROUND

Unless otherwise specifically indicated, the following material facts are undisputed.

Plaintiff was hired by Columbia Gas of Ohio, a subsidiary of defendant Columbia Energy Group ("Columbia"), on March 1979. Columbia was acquired by NiSource, Inc. in a corporate merger in 2000.[1] Prior to the merger, Columbia established the Columbia Energy Long-Term Disability Plan ("LTD plan") to provide its employees with disability benefits.  As an employee of Columbia, plaintiff was at all relevant times covered as a participant in the LTD plan.  The LTD plan was an employee welfare benefits plan as defined by ERISA. Columbia admitted in its answer to plaintiff's amended complaint that it was both a plan sponsor and a plan administrator. Although Columbia did not seek leave to amend its response, it denied during discovery and denies at the

---

[1]   We note that defendants have filed a joint motion for summary judgment, as such, all three defendants have submitted the same arguments. Because at issue in this case are actions taken by Columbia prior to its merger, we refer to all three defendants as "Columbia."

summary judgment stage, that it was an administrator of the LTD plan.

Liberty Life Assurance Company of Boston ("Liberty") issued a group long-term disability policy to Columbia for the benefit of its employees and administered the benefits.[2] The Liberty LTD policy provided that upon request, Liberty would prepare and furnish a certificate of insurance to covered employees, providing relevant information including a description of the disability benefits under the policy. Columbia did not request such a certificate.

During or about July 2000, Columbia distributed to employees a "summary plan description" ("SPD") for the LTD plan as required by ERISA, including a booklet titled "the Power of Choice." Columbia had final authority and responsibility over preparation of the 2000 SPD. Plaintiff received the 2000 SPD provided by Columbia. He did not have a copy of the Liberty LTD policy.

The 2000 SPD contained the following definitions of disability:

> **Disability - during the first two years.** You're considered disabled if you're unable to perform any of

---

[2] Plaintiff dismissed with prejudice all claims against Liberty on December 5, 2006 [document #65]. As such, we will not address any claims against Liberty.

the material duties of your regular job because of an injury or illness, or your injury or illness prevents you from earning more than 80% of your base monthly earnings at any other full-time or part-time job.

**Disability - after two years of the same disability.** You're considered disabled if your injury or illness prevents you from performing the material duties of any job for which you're reasonably qualified by training, education or experience, or your injury prevents you from earning more than 80% of your base monthly earnings at any other full-time or part-time job.

In July 2000, plaintiff was diagnosed with a heart condition and high blood pressure. Due to his illness, he was unable to continue working in his former capacity with his employer. Plaintiff has not worked for defendants, or any other employer, since the onset of his disability.

Plaintiff submitted an application for LTD plan disability benefits on or about November 9, 2000 to Liberty, who processed the application. After the mandatory 180-day waiting period, Liberty approved long-term disability benefits for plaintiff. Pursuant to his coverage under the LTD plan, plaintiff received sixty percent (60%) of his monthly pre-disability earnings minus applicable taxes starting on January 2001. These payments continued through April 2003.

Liberty evaluated medical documentation provided by plaintiff and determined that he was able to engage in sedentary to light work, with some restrictions. Liberty also retained

Rehabilitation Independent, a vocational rehabilitation, medical/disability case management company in the Fall of 2002 to conduct a transferrable skills analysis and labor market survey. Rehabilitation Independent was to determine whether plaintiff's medical condition, skills, training and experience allowed him to secure employment in any occupation. The survey, conducted by vocational consultant Teresa Marques, concluded that plaintiff could work as a telephonic customer service representative, meter reader supervisor or service dispatcher. Ms. Marques' survey revealed that the occupations existed in the relevant labor market of Wheeling, West Virginia. The expected annual earnings of those jobs were between $20,820 and $32,750.

Liberty applied the following definition of disability found in the LTD policy:

    i.  if the Covered Person is eligible for the 24 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

    ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

On or about April 25, 2002, Liberty sent a letter notifying plaintiff that he was no longer eligible for long-term disability benefits because he did not meet the LTD plan's definition of

disability beyond twenty-four months. The denial letter indicated that Liberty considered the medical documentation received from two of plaintiff's physicians, Dr. Kenamond and Dr. Millit, as well as the vocational analysis conducted by Rehabilitation Independent.

On May 1, 2003 plaintiff filed an appeal of Liberty's determination that he was ineligible for continued long-term disability benefits. Liberty sent another denial letter dated May 22, 2003 notifying plaintiff that his appeal had been denied. Liberty based its decision on the fact that the "totality of the medical and vocational documentation reviewed does not substantiate that you are disabled from performing other occupations within [plaintiff's] vocational capacity." Liberty specifically cited the definition of disability under the LTD policy as the applicable definition to plaintiff's claim.

Plaintiff wrote a letter dated May 26, 2003 to Liberty stating that he had not received a response to his appeal, and further disputed Liberty's decision to terminate benefits. Plaintiff's letter included a claim that he was not qualified to do sedentary work that would pay him at least 80% of his prior earnings as required by the benefit booklet provided by Columbia.

On or about June 4, 2003, plaintiff filed a grievance alleging that Columbia had violated a collective bargaining

agreement ("CBA") by terminating his disability benefits. Pam East, Senior Human Resources Consultant for Columbia, attended the grievance meetings and made the ultimate decision to deny plaintiff's grievance based on Columbia's view that the termination of disability benefits did not violate the CBA. At issue at the grievance meetings was the plan's definition of disability.

Ms. East notified plaintiff in a June 12, 2003 letter that plaintiff's long-term disability benefits had been terminated effective May 1st, 2003. As a result, Columbia was placing plaintiff on a temporary leave of absence through July 31, 2003 while plaintiff appealed Liberty's ineligibility determination. Plaintiff's employment would, and did, terminate on July 31 st, 2003.

II. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e. the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248-49.

III.  DISCUSSION

Plaintiff has moved for summary judgment on the ground that he meets the disability definition set forth by the Summary Description Plan ("SPD") provided by Columbia. According to defendants, the language in the 2000 SPD and the LTD policy do not conflict, therefore, the LTD policy controls. Defendants further assert that even if the definitions of disability do conflict, plaintiff still does not meet the 2000 SPD definition of disability.

The court finds that there is a conflict between the 2000 SPD and the LTD policy's definition of disability. We further find that plaintiff's interpretation of the SPD definition of disability is correct.

In reviewing a claim such as this, the court must first determine the appropriate standard of review. Where the terms of the plan give the plan administrator full discretion to interpret and apply the terms of the plan, our review is limited to determining whether the administrator's decision was "arbitrary and capricious." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989). Under the arbitrary and capricious standard, the court must defer to the administrator of an employee benefit plan unless the administrator's decision is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan. See, Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40 (3d Cir. 1993).

Yet, deference is not the equivalent of no review at all. An administrator's decision must be supported by substantial evidence in order to avoid being found "arbitrary and capricious." See Daniels v. Anchor Hocking Corp., 758 F. supp. 331 (W.D. Pa. 1991). Further, the decisionmaker "must examine the relevant data and articulate a satisfactory explanation for

its action including a 'rational connection between the facts found and the choice made.'" Motor Vehicle Mfgs. Ass'n v. State Farm Mutual Auto. Ins. Co., 463 U.S. 29, 43 (1983)).

If the plan administrator is not granted discretionary authority to interpret the terms of the Plan, the court's review of the administrator's decision is de novo. See Bruch, 489 U.S. at 109.

Plaintiff argues that defendants' decision should be examined under a "heightened" arbitrary and capricious standard of review because defendants have a conflict of interest in determining eligibility for benefits under the SPD as well as having to pay for those benefits. The Court of Appeals for the Third Circuit in Pinto v. Reliance Standard, 214 F.3d 377 (2000), explained that in such a situation, administrators have an incentive to deny close claims in order to keep costs down. When faced with such a conflict, courts should apply a "heightened" standard of review.

Columbia currently denies that it is or ever was a plan administrator. This is in spite of the fact that Columbia admitted in its response to the amended complaint that it was a plan administrator. A fact that is deemed admitted, will remain admitted throughout the rest of the case. We do not, however, rest our conclusion just on this admission.

The summary plan description has conflicting statements regarding who is the plan administrator. At one point the SPD states that "the [LTD] plan is administered for Columbia by Liberty Mutual." A chart found later in the SPD also designates Liberty Mutual as an administrator of the plan. This is later contradicted in the SPD when it states that "Columbia Energy Group is also the plan administrator for all the benefit plans except the Retirement Plan and the Savings Plan Committee." It goes on to say that the plan administrator has the sole authority to interpret the terms of the plan. The SPD also lists the contact information for three plan administrators: Columbia, and the plan administrators for the retirement plan and the savings plan. Therefore, the SPD at times informed employees that Columbia was the LTD plan administrator, that it had the sole authority to interpret the terms of the plan and that it was the entity to be contacted in the event that an employee needed to meet with or ask questions of the administrator.

Because we are reviewing plaintiff's benefits under the LTD plan, *as amended by the SPD*, Columbia is the proper party to make the determinations of plaintiff's eligibility for disability benefits. Therefore, we find that Columbia is the plan administrator.

The Court of Appeals for the Third Circuit held in Bernstein v. Retirement Account Plan for Employees of Allegheny Health Education and Research Foundation, 334 F.3d 365 (3d. Cir. 2003), that "when a summary plan description under ERISA conflicts with the complete, detailed ERISA plan document, a plan participant may nevertheless state a claim for plan benefits based upon terms contained in the summary plan description." Id. at 368. The court reasoned that ERISA evidences Congress's desire that the SPD be transparent, accurate and comprehensive. This is because the SPD is the document to which the lay employee is likely to refer in obtaining information about the plan and in making decisions affected by the terms of the plan. Moreover, a plan participant who bases a claim for plan benefits on a conflict between an SPD and plan document need neither plead nor prove reliance on the SPD. Id. at 381.

Under Bernstein we are instructed that if an SPD conflicts with a plan document, we must read the terms of the "contract" to include the terms of the plan document, as superseded and modified by conflicting language in the SPD. Id. The holding in Burnstein was recently reaffirmed by the Court of Appeals for the Third Circuit in Hooven v. Exxon Mobul Corporation, 2006 WL 2988116 (3d. Cir. Oct. 20, 2006).

In the instant case, the SPD and the LTD plan have different definitions of disability. The LTD Plan policy provides that:

i.  if the Covered Person is eligible for the 24 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

The 2000 SPD contained the following definitions of disability:

**Disability - during the first two years**. You're considered disabled if you're unable to perform any of the material duties of your regular job because of an injury or illness, or your injury or illness prevents you from earning more than 80% of your base monthly earnings at any other full-time or part-time job.

**Disability - after two years of the same disability**. You're considered disabled if your injury or illness prevents your from performing the material duties of any job for which you're reasonably qualified by training, education or experience, or your injury prevents you from earning more than 80% of your base monthly earnings at any other full-time or part-time job.

We agree with defendants that the SPD need not "parrot" the disability policy because the SPD is, by its nature, a summary and cannot contain all the terms in the full plan. However, the question is not whether the definitions are identical, they are

clearly not. The question is whether the definition of disability in the summary actually conflicts with the terms of the disability policy. We find that it does.

The disability policy clearly states that after 24 months of disability, a covered person is disabled if he or she is unable to perform the material duties of any occupation. The SPD definition, however, sets forth two ways in which a covered person is considered disabled: 1) if your injury or illness doesn't allow you to perform the material duties of any job for which you're reasonably qualified <u>or</u> 2) if your injury prevents you from earning more than 80% of the employee's base monthly earnings at any other full-time or part-time job.

Defendants attempt to diminish this difference by stating that the LTD policy has the same definition of disability, differently worded: "the Covered Person may be employed on his Own Occupation or other occupation, must satisfy the Elimination Period and must be earning between 20% and 80% of his Basic Monthly Earnings." Defendants fail to mention that this is the definition of "partial disability" benefits. Both parties agree that plaintiff was not eligible for partial disability benefits and the term is not mentioned in the SPD's section of long term disabilities. Therefore, it seems disingenuous to ask this court to interpret the summary plan description's *long term* disability

definition in conjunction with the *partial* disability definition in a section of the LTD policy that is inapplicable to this plaintiff or this case. The comparison in this case must be between the two conflicting long term disability definitions.

Although defendants do not admit that the two definitions conflict, the fact that they refer us to a completely different section of the LTD policy clearly shows that they do not believe that the SPD definition actually comports with the policy's definition of disability.

Finally, defendants argue that even if there is a conflicting definition, plaintiff still does not qualify for benefits because he is not "actually working" and earning less than 80% of his base monthly earnings. Plaintiff argues that the SPD definition makes clear that plaintiff only needs to be "prevented from earning" 80% of his base monthly earnings. We must agree with plaintiff.

The SPD definition of disability clearly states that the injury must "prevent" plaintiff from earning a percentage of his monthly income. Although the parties point to drafts of the 2000 SPD as evidence of intent, we do not rely on the drafts that were not actually included in the SPD. Rather, we read the disability definition that appears in the SPD and it does not require that plaintiff actually work.

15

Having decided the appropriate definition of disability, we must decide what is the adequate remedy. Plaintiff urges the court to award all "past, present, and future" disability benefits, while defendants urges us to affirm its decision to deny benefits because its decision was not arbitrary and capricious. We find that defendant's decision to deny benefits was arbitrary and capricious because it did not consider the SPD definition of disability in evaluating plaintiff's claim. Therefore, we order defendants to evaluate plaintiff's claim for disability in accordance with the LTD policy as amended by the SPD and as interpreted by this court. We are not in the position to evaluate plaintiff's disability claim in the first instance.

IV. Conclusion

Accordingly, plaintiff's summary judgment motion must be granted. Based on the reasons contained herein, defendants' motion for summary judgment is denied. The appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT WEST<br>　　　　Plaintiff,<br><br>　　v.<br><br>NISOURCE LONG-TERM DISABILITY<br>PLAN (f/k/a COLUMBIA ENERGY<br>GROUP LONG-TERM DISABILITY<br>PLAN), COLUMBIA ENERGY GROUP.<br>NISOURCE, INC., and LIBERTY<br>MUTUAL INSURANCE COMPANY<br>d/b/a LIBERTY LIFE ASSURANCE<br>COMPANY OF BOSTON,<br>　　　Defendants. | )<br>)<br>)<br>)  Civil Action No. 03-1216<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

O R D E R

Therefore, this 8th day of December, 2006, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment [document #51] is granted. IT IS FURTHER ORDERED THAT Defendant's Motion for Summary Judgment [document #48] denied.

BY THE COURT:

_____, J.

cc:   All Counsel of Record

17